UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LORI BETTS | : | |
| | : | |
| v. | : | C.A. No. 14-274S |
| | : | |
| CAROLYN COLVIN | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance ("SSDI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on June 17, 2014 seeking to reverse the decision of the Commissioner. On February 27, 2015, Plaintiff filed a Motion to Reverse Without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 9). On April 17, 2015, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 11). Plaintiff did not file a Reply Brief.

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be GRANTED and that Plaintiff's Motion to

Reverse Without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 9) be DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for SSI (Tr. 146-151) and DIB (Tr. 152-158) on March 9, 2011 alleging disability since February 15, 2008. Plaintiff later amended her onset date to February 23, 2011. The applications were denied initially on May 7, 2011 (Tr. 94-97) and on reconsideration on October 11, 2011. (Tr. 101-106). Plaintiff requested an Administrative hearing. On September 18, 2012, a hearing was held before Administrative Law Judge Gerald Resnick (the "ALJ") at which time Plaintiff, represented by counsel and a vocational expert ("VE") appeared and testified. (Tr. 34-57). The ALJ issued an unfavorable decision to Plaintiff on October 22, 2012. (Tr. 16-29). The Appeals Council denied Plaintiff's Request for Review on April 17, 2014, therefore the ALJ's decision became final. (Tr. 1-3). A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by not including the required use of a cane in his RFC findings and by giving only minimal weight to the opinion of Dr. Furey, her treating physician.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ properly evaluated Dr. Furey's opinions, including his opinion that Plaintiff needed a cane to ambulate. The Commissioner also contends that, even if Plaintiff is correct regarding the necessity of using a cane, any error is harmless because this limitation would not have precluded her past relevant work as a telemarketer.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. <u>See</u> 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (<u>see</u> 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). <u>See also</u> <u>Dudley v. Sec'y of Health and Human Servs.</u>, 816 F.2d 792, 794 (1st Cir. 1987).

## B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. <u>Heggarty v. Sullivan</u>, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. <u>See</u> 42 U.S.C. § 406; <u>Evangelista v. Sec'y of Health and Human Servs.</u>, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.      The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  <u>Seavey</u>, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  <u>Nguyen</u>, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  <u>Heggarty</u>, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  <u>See</u> <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

       1.      **Pain**

"Pain can constitute a significant non-exertional impairment."  <u>Nguyen</u>, 172 F.3d at 36.  Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C.

§ 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs

and laboratory findings show medical impairments which reasonably could be expected to produce

the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the

following factors:

> (1)  The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)  Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)  Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)  Treatment, other than medication, for relief of pain;
>
> (5)  Functional restrictions; and
>
> (6)  The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's

statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.  Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to the

credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829

F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was fifty-one years old on the date of the ALJ's decision and she attended some college.  Plaintiff's source of income at the time of the ALJ hearing was General Public Assistance. Plaintiff worked in the past as a telemarketer and a cashier.  (Tr. 28, 42).  Plaintiff alleges disability due to arthritis, knee pain and obesity.  (Tr. 78).

In 2008, prior to Plaintiff's alleged date of onset, she underwent an open reduction and internal fixation surgery to repair a right femur fracture.  (Tr. 270-271).  During her recovery, Plaintiff used a cane for walking.  (Tr. 261-262).  On May 7, 2008, Dr. Ira Singer noted a "severely arthritic knee" which will eventually require "total knee replacement."  (Tr. 262).  He also indicated that he did not expect "fantastic motion" because of Plaintiff's pre-existing osteoarthritis.  Id.  By July 2, 2008, Dr. Singer indicated that Plaintiff was "doing well with her therapy and [was] completely full weight-bearing with a cane."  (Tr. 260).  Dr. Singer also noted that Plaintiff was "actually able to walk without the cane" and was "doing quite well."  Id.  His plan was for Plaintiff to return to work in two weeks, working four-hour shifts.  Id.  On January 9, 2009, Dr. Singer wrote

that Plaintiff was "relatively asymptomatic." (Tr. 259). Plaintiff reported pain with weather changes. Id. He observed that Plaintiff could flex her right leg to 95 degrees, and had full extension with good quadriceps strength. Id. Plaintiff was able to walk without any limp. Id. Dr. Singer wrote, "The patient [ha]s done very well and has a satisfactory result from the distal femur fracture." Id. He opined that she could return to working eight hours per day. Id.

The record also contains treatment notes from April 15, 2009 through October 14, 2010, which recorded Plaintiff's complaints of left ankle pain, right knee pain and right shin pain. (Tr. 258, 286-287, 290-292, 299-300, 308-309, 311-312, 321-322). The record also contains treatment notes stemming from a car accident that occurred on September 4, 2010 and reportedly caused neck and back pain. (Tr. 274-276, 277-279, 280-281).

On February 24, 2011, the day after Plaintiff alleges she became disabled, she was treated in the Emergency Room for left ankle and right knee pain. (Tr. 398). The attending physician observed "swelling" in the extremities and noted Plaintiff's description of her pain as an ache that measured 5/10. (Tr. 399). The doctor noted Plaintiff's report of difficulty walking. (Tr. 401).

On examination, the physician observed a normal range of motion and a normal, weight-bearing gait. (Tr. 402). The doctor wrote that Plaintiff would seek a follow-up evaluation with an orthopedist. Id. A scan of Plaintiff's right knee, performed the same day, showed no acute fracture and "[d]iffuse degenerative joint disease." (Tr. 404). A scan of Plaintiff's left ankle also revealed no fracture, but showed soft tissue swelling and a subchondral cyst in the distal fibula. (Tr. 405).

Plaintiff returned to Dr. Singer on March 2, 2011. (Tr. 408). She complained of increasing right knee pain as well as left ankle pain, but denied any recent trauma. Id. Plaintiff told Dr. Singer

that she had been taking Ibuprofen with some relief, but indicated that her pain made it difficult to work at Walmart, where she spent a lot of time on her feet.  Id.  He noted that Plaintiff "remains significantly overweight" and walked with a "slight limp on the right."  Id.  He observed that Plaintiff could flex up to 100 degrees and extend to -5 degrees.  Id.  No effusion was observed, but "[m]arked crepitus" was noted.  Id.  Plaintiff's left ankle was stiff without swelling.  Id.  Dr. Singer wrote that Plaintiff had "significant" edema and evidence of stasis disease.  Id.  He stated that an x-ray scan showed "significant" degenerative disease in the right knee and identified osteoarthritis in the right knee as Plaintiff's major problem.  Id.  He advised Plaintiff to continue taking Ibuprofen for her left ankle and provided a note excusing Plaintiff from work for six weeks.  Id.  He opined that her symptoms were "clearly secondary to weight-bearing."  Id.

On April 13, 2011, Plaintiff told Dr. Singer that she continued to experience right knee pain, but had experienced some improvement with rest.  (Tr. 407).  He wrote that, based on Plaintiff's "severe arthritis, it is unlikely that she is going to be able to tolerate any type of long standing."  Id.  He provided a new work excuse for an additional six weeks.  Id.

Plaintiff was treated in the Emergency Room on May 25, 2011, after a fall down the stairs.  (Tr. 385-394).  She sustained abrasions on her left arm and complained of mid- and upper-back pain.  (Tr. 386).  She reported no leg or foot injuries or pain at that time.  (Tr. 388).

On June 1, 2011, Dr. Singer evaluated Plaintiff after her fall.  (Tr. 406).  He indicated that she had received multiple injuries to her neck, back and left arm.  Id.  He noted that Plaintiff's back and neck problems had resolved, as well as most of her left arm pain, but she was diagnosed as having a possible elbow fracture, which Dr. Singer then evaluated.  Id.  Plaintiff denied any swelling

-13-

or ecchymosis in the left elbow.  Id.  He reassured Plaintiff and encouraged her to maintain mobility.

Id.

On June 10, 2011, Plaintiff told Dr. Horan that she stopped seeing Dr. Singer because "he didn't feel he could do anything more for her." (Tr. 415).  On examination. Plaintiff's knee showed signs of crepitus, but exhibited a full range of motion, and there was no redness, swelling, or deformity.  Id.  Dr. Horan recommended weight loss as soon as possible.  Id.  Dr. Horan treated Plaintiff next on July 8, 2011, noting that she had been out of work since February 2011 and was applying for SSI.  (Tr. 416).  He also noted that Plaintiff had not participated in physical therapy.

Id.

Plaintiff received a total of eight physical therapy sessions at the Southern New England Rehabilitation Center from July 2, 2011 through August 19, 2011.  (Tr. 489-497).

On July 27, 2011, Dr. Singer noted that Plaintiff had responded well to physical therapy.  (Tr. 441).  He wrote, "[s]he is walking better and tolerating increased activities."  Id.  He observed that Plaintiff could still flex to 90 degrees and extend fully, and that Plaintiff's knee tenderness had decreased.  Id.  Although Plaintiff reportedly still had some pain with patellofemoral compression, "[h]er acute symptoms ha[d] improved somewhat."  Id.  Dr. Singer indicated that Plaintiff "still has significant debilitating chronic disease of the right knee" and advised her to work part-time within the parameters of her "disability."  Id.

On September 1, 2011, Dr. Singer wrote that Plaintiff had attempted to return to work, but had difficulty staying on her feet for any long period of time and had stopped working three weeks earlier.  (Tr. 438).  Plaintiff complained of right knee pain which has been relatively disabling.  Id.  Dr. Singer noted that Plaintiff could still flex to 90 degrees and extend fully with "marked significant

-14-

crepitus." Id. Plaintiff reported "significant lateral joint tenderness and patellofemoral pain as well." Id. Dr. Singer advised Plaintiff to continue with symptomatic management and to avoid long periods of walking and standing. Id.

On September 2, 2011, Dr. Horan evaluated Plaintiff for complaints of right knee pain, noting that Motrin was reportedly not working, and observing crepitus in Plaintiff's right knee, as well as an antalgic gait. (Tr. 498).

Plaintiff was treated in the Emergency Room on October 31, 2011 for right knee pain beginning the previous day after carrying a heavy load up stairs. (Tr. 429-430). Plaintiff said she was unable to bear weight and she had a limited range of motion due to pain. (Tr. 432). Plaintiff was using a cane. (Tr. 433). The attending physician's clinical impression was a sprained left knee. Id. A scan of Plaintiff's right knee, performed the same day, showed postoperative changes involving the distal femur, degenerative joint disease, and patella displaced inferiorly (with no significant change from the February 24, 2011 scan). (Tr. 435). The physician advised Plaintiff to continue to use the cane until she could follow up with a physician. (Tr. 436).

On November 2, 2011, Dr. Singer noted Plaintiff's report that she had no improvement in her right leg function. (Tr. 437). He observed no effusion in the right knee, and noted that Plaintiff could flex to 90 degrees with full extension. Id. Plaintiff reported tenderness along the medial joint line, and Dr. Singer noted patellofemoral crepitus. Id. He wrote that Plaintiff had "relatively severe osteoarthritis of the right knee" and advised her to continue with symptomatic medications and activity adjustments as necessary. Id.

Plaintiff was also treated by Dr. Christopher M. Furey on approximately four occasions during the relevant time period, from January 2012 through May 2012. (Tr. 442-465). During

Plaintiff's initial office visit on January 3, 2012, Dr. Furey observed normal extremities, with no clubbing or edema, normal perfusion and no cyanosis. (Tr. 462-463). The musculoskeletal examination similarly revealed a normal range of motion and no deformities, tenderness or swelling. Id. The findings of the neurological examination were also normal, showing full strength in Plaintiff's extremities, a normal sensory examination and normal reflexes. Id. During that evaluation, Dr. Furey discussed the complications of Plaintiff's obesity with her "at length," but Plaintiff "refused" a referral to a nutritional consultant. (Tr. 463-464).

When Plaintiff was next treated by Dr. Furey, on February 13, 2012, she complained primarily of eczema and sinus pain and asked the physician to complete paperwork for her disability application. (Tr. 460-461). On that date, he described Plaintiff as "well appearing" and examined only her ears and skin. (Tr. 461). On February 22, 2012, Plaintiff told Dr. Furey that she wanted her disability paperwork filled out that day and indicated that she could not work because of chronic knee pain. (Tr. 457). He noted that Plaintiff's right knee examination was limited by her fatty tissue, but there was no joint line tenderness, "mild" pain with passive flexion of knee beyond 90 degrees and no erythema or warmth of the joint. (Tr. 458). Dr. Furey wrote that there was "[n]o ligamentous instability." Id. On March 7, 2012, Plaintiff returned for her disability paperwork. (Tr. 444). He did not perform a musculoskeletal examination on that date. (Tr. 445).

A.    The ALJ's Decision

The ALJ decided this case against Plaintiff at Step 4. At Steps 2 and 3, the ALJ found that Plaintiff's right lower extremity impairment (status post a right femur fracture/arthritis of her right knee in February 2008) and obesity were severe impairments, but that they did not meet or medically equal the requirements of any per se disabling impairment under the regulatory Listing of

-16-

Impairments. (Tr. 22-25). The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of sedentary work (including lifting and carrying up to ten pounds occasionally and less than ten pounds frequently, sitting for six hours in an eight-hour workday, and standing and/or walking for two hours in an eight-hour workday), push/pull leg controls occasionally with her right leg, and occasionally climbing stairs/ramps and ropes/ladders/scaffolds with occasional balancing, stooping, crouching, crawling and kneeling. (Tr. 25). At Step 4, in reliance on VE testimony, the ALJ found that Plaintiff could perform her past relevant work as a telemarketer. (Tr. 28). Accordingly, the ALJ concluded that Plaintiff was not disabled from February 23, 2011 through the date of his decision. (Tr. 28-29).

**B.      Plaintiff Did Not Meet Her Step 4 Burden**

The ALJ decided this case adverse to Plaintiff at Step 4 finding that she was able to perform her past relevant work as a telemarketer. (Tr. 28). Plaintiff "bears the burden of proof at step four." Wells, 267 F. Supp. 2d at 144. Here, the ALJ properly found that Plaintiff did not meet that burden.

The record is clear that Plaintiff suffers from chronic and severe right knee arthritis which is aggravated by her obesity. The record also reflects Plaintiff's use of a cane in recent years.

In making his decision, the ALJ placed "significant probative weight" on the 2011 opinions of Dr. Georgy (Ex. 2A) and Dr. Purins (Ex. 6A). (Tr. 25). Both concluded after review of the medical records that Plaintiff's impairments did not prevent her from performing her past work as a telemarketer. Both reviewed and considered the records of Plaintiff's treating orthopedist, Dr. Singer, and were aware of Plaintiff's use of a cane for assistance. (See, e.g., Tr. 67). As to Dr. Singer, the ALJ thoroughly reviewed his records and accurately observed that Dr. Singer "essentially precluded her from working temporarily and in particular for work involving prolonged standing and

walking (Exhibits 6F and 11F)." (Tr. 27). Since these restrictions were consistent with the RFC assessments of Drs. Georgy and Purins, the ALJ based his RFC finding on the totality of this evidence and, according to the Commissioner, it constitutes substantial evidence in support of the Step 4 denial.

Plaintiff takes issue with the ALJ's evaluation of the opinions of Dr. Furey, a treating primary care physician. Plaintiff first saw Dr. Furey in January 2012. (Tr. 462-465). According to the records, Plaintiff saw Dr. Furey on a few occasions in 2012. (Tr. 442-465). It does not appear that Plaintiff specifically treated with Dr. Furey for her knee pain. While the history of right knee pain is noted by Dr. Furey, Plaintiff saw him for ear pain, eczema and to have disability paperwork completed. In his office treatment notes, Dr. Furey never assesses any functional limitations related to the knee. He does document that Plaintiff's knee pain is "worse with standing," (Tr. 462), and "better with meds, worse with activity." (Tr. 457). He notes reported knee pain at 5/10 (Tr. 462), and "mild pain" with passive flexion of the knee beyond 90 degrees. (Tr. 458).[1]

At the hearing, the ALJ expressed the need for more "specific" information from Dr. Furey and gave Plaintiff ten days to present additional information. (Tr. 46-49, 56). The ALJ at one point noted that Dr. Furey was "no help on the physical exam" and Plaintiff's counsel conceded "not a ton" in response. (Tr. 47). Finally, the ALJ wanted information confirming her medical "need" for a cane as well as a "precise functional assessment" because there was an issue in the ALJ's mind about Plaintiff's ability to do her prior sedentary work as a telemarketer. (Tr. 49). The ALJ advised

---

[1] These observations appear to conflict with Dr. Furey's later opinion of "severe right knee pain" in the disability questionnaire obtained by Plaintiff's counsel. (Tr. 501).

Plaintiff's counsel "[s]o I got to see a little bit more from him other than filling out a form shortly after he gets – okay." Id.

In response, the ALJ did not get the specificity and support he requested. Plaintiff submitted some conclusory, check-list type questionnaires regarding disability and pain. (Exhs. 15F and 16F). As noted, although Dr. Furey noted the presence of "severe" right knee pain, his treatment records do not document such levels of pain. He also provides no specific functional limitations arising from such pain or any specific medical support for Plaintiff's need to use a cane. Based on these deficiencies, the ALJ gave "less/minimal probative weight" to Dr. Furey's opinions. (Tr. 27-28).

While the ALJ does not expressly discuss the issue of the cane in his decision, Dr. Purins and Dr. Georgy were aware of Plaintiff's use of a cane and still found that she was able to perform her past sedentary work as a telemarketer. Under the treating physician rule (20 C.F.R. § 404.1527(c)(2)), a treating physician's opinions are entitled to controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques." In other words, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight...will [be] give[n] to that opinion." 20 C.F.R. § 404.1527(c)(3). Furthermore, in order to find that a cane is "medically required," "there must be medical documentation establishing the need for a [cane] to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Social Security Ruling 96-9P, 1996 WL 374185 at *7. "[A]n individual who must use a [cane] to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of [such] impairment..., and

who has no other functional limitations or restrictions may still have the ability to [perform] sedentary work that exists in significant numbers." Id.

On September 24, 2012, after the ALJ hearing, Dr. Furey provided a one-page medical opinion consisting of four questions and his "yes" or "no" checkmark responses. (Tr. 504). Dr. Furey checked "yes" in response to the following: "The above-referenced claimant indicated that she used a cane to ambulate. Based upon your experience as her treating physician, is this medically reasonable?" Id. The opinion did not provide any further detail regarding the use of a cane by Plaintiff.

Although the ALJ did not specifically address this individual statement from Dr. Furey's opinion (Tr. 27-28), the ALJ nevertheless provided ample justification for rejecting the substance of that opinion in his decision. (Tr. 25). The ALJ wrote: "While the claimant testified that she suffered from numbness in her left hand related to holding a cane and which caused her to drop objects, the record fails to document a medically determinable basis for same as this is not referred to or established in the reports of treating sources." (Tr. 25). Moreover, as the ALJ accurately noted, the treatment notes themselves do not document the alleged limitation. Instead, the medical records reflect limited cane use. For example, the notes show that Plaintiff used a cane after her knee surgery in 2008, but became independent of the cane in January 2009. (Tr. 259-262). After that, the only notations of cane use were in October 2011, when Plaintiff used a cane at the Emergency Room when she sought treatment for right knee pain caused by carrying a heavy load up stairs. (Tr. 429-436); and two self-reports of cane use to Dr. Furey in February and March 2012. (Tr. 444-457). Notably, on June 22, 2011, Plaintiff reported to Social Security that she used a cane only "at times"

(Tr. 244) and she testified before the ALJ that she used the cane when "necessary" while working as a Walmart cashier in 2011. (Tr. 42).

Dr. Furey's own examination notes also fail to observe or document the medical necessity for Plaintiff's use of a cane. As the ALJ accurately noted during Plaintiff's initial evaluation, Dr. Furey observed normal extremities, with no clubbing or edema, normal perfusion and no cyanosis. (Tr. 28, 462-463). The musculoskeletal examination similarly revealed a normal range of motion, and no deformities, tenderness or swelling. Id. The findings of the neurological examination were also normal, showing full strength in Plaintiff's extremities, a normal sensory examination and normal reflexes. Id. When Plaintiff was next treated by Dr. Furey, on February 13, 2012, he described Plaintiff as "well appearing" and examined only her ears and skin. (Tr. 461). On February 22, 2012, Dr. Furey noted that Plaintiff's right knee examination was limited by her adiposity, i.e., obesity, but, as the ALJ discussed, there was no joint line tenderness, "mild" pain with passive flexion of knee beyond 90 degrees and no erythema or warmth of the joint. (Tr. 28, 458). Dr. Furey wrote that there was "[n]o ligamentous instability." Id. He did not perform a musculoskeletal examination on March 7, 2012, when Plaintiff returned for her disability paperwork. (Tr. 445). The ALJ accurately observed that Dr. Furey did not order an MRI scan of Plaintiff's knee and that her pain treatment was only conservative. (Tr. 28).

For those reasons, the ALJ concluded that Dr. Furey's actual findings, which included only one brief reference to mild right knee pain, "contained no reasonable basis" for the limitations included in his checklist opinions. Id. This rationale is equally applicable to his opinion regarding Plaintiff's medical need for a cane and thus the failure to specifically discuss the cane is harmless

error on this record. Plaintiff was given a reasonable opportunity to supplement the record and did not provide sufficient medical evidence to meet her Step 4 burden.

Plaintiff has shown no error in the ALJ's RFC assessment or Step 4 finding and, since they are otherwise supported by substantial evidence, they must be affirmed.

## VI.  CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be GRANTED and that Plaintiff's Motion to Reverse Without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 9) be DENIED.  Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 22, 2015